Good morning. Our first case today, 2015-1233, Downhole Pipe & Equipment v. ITC. Is it Chagrin?  Chagrin. Okay. Please proceed. Good morning, Your Honors. May it please the Court, I'm Roger Chagrin on behalf of the appellants, Vam Drilling et al. One thing is clear at the outset of this argument, and that is that the appellants and the Appellee International Trade Commission are in complete agreement that the original affirmative threat of injury determination by the ITC was, and I quote from footnote 5 of the ITC's brief to the Court on page 27, the Commission agrees with appellants that the original determination also was supported by substantial evidence. Therefore, the only things that we and the Appellee ITC disagree about are the two issues before this Court. First, did the Court below find that the affirmative threat determination by the ITC was unsupported by substantial evidence, and whether by doing so, was that re-weighing of the evidence incorrect under the standard of review, and did the Court also violate the standards of review established by this Court in Nippon and NSK by completely failing to even review the record as a whole to determine whether the record as a whole supported the Commission's determination? Now, hypothetically, a CIT decision reversed certain fact findings for lacking substantial evidence, and then for completely different fact findings the Commission made, the CIT said that it needed more explanation, and therefore was, I guess, vacating those findings and seeking more explanation to understand the reasoning underlying those fact findings. And what do you think our standard of review should be for a CIT decision like that? Clearly, Your Honor, it should be the Nippon-NSK standard of review. In fact, that's almost exactly what happened. But Nippon didn't rule on that particular kind of fact pattern. No, NSK did. Nippon, in fact, was almost identical to this case. In the Nippon case, Judge Rastani said, I reviewed all the data on underselling, and I believe the Commission is completely wrong, and I'm sending this back to you, and you better do it the way I tell you to do it. And this Court said, you know, you shouldn't be reweighing the evidence. But even if you're correct, you still didn't look at the decision as a whole. Look at all these other factors. I don't follow how that reconciles with Taiwan Semiconductor, though. In those instances, when the CIT remands certain fact findings back to the Commission for further explanation so that the CIT can do meaningful review, then it is our duty to review that decision, that choice by the CIT for abuse of discretion. Correct. So under my fact pattern, what we have in my hypothetical is a hybrid case, don't we? Yes, and to answer your question, Your Honor, I think in the hybrid case, then you should be applying the standard view of Nippon and NSK. But in Nippon and NSK, in both of those cases, what the CIT did was send it back and say, you must make a negative injury finding or reopen the record. In this case, what the Court said is, there's a couple facts that I don't think are supported by substantial evidence. It appears that you relied heavily on those facts. Go back and look at this again. Maybe in reweighing, you'll still conclude that there should be a negative injury determination. But the Court didn't direct entry of that determination. No, I would agree. But as you said, Your Honor, and I know you wrote the decision in NSK, here the Court clearly said as to what the Court said was the integral part of the Commission's affirmative determination. The Court said in its conclusion, in its holding, that I have reviewed the ITC purchaser's questionnaire submitted by the domestic purchasers that the ITC considered large. The Court concludes that substantial evidence does not support two findings made by the Commission and two general conclusions the ITC reached on the basis of those two findings. I don't think the Court was just saying, and he finished by saying, from these erroneous findings, the ITC reached the unsupported conclusion. I don't know how... We're only looking at part of the CIT decision. There was another part of the CIT decision where the CIT judge made it crystal clear that for other findings unrelated to the findings you just quoted, the CIT judge said, I need more. I need more explanation and remanded on that. And as I say, Your Honor, those were very minor. If you're reading, as I know you have, the overall decision of the Court, you have 10 or 12 pages saying, these are all the reasons when I reweigh the evidence that on the main part of your determination, I find that it's not supported by substantial evidence. And by the way, on two minor things that are completely incidental to their decision, I think that I'd like you to explain this more. And what concerns me as someone who practices... The finding that there was a substantial market share by the importers over the period of investigation, that's minor, as well as the ramp up of inventory, that's another minor finding? Yeah, I don't think those are minor findings. I would say in the context of the decision, because it was all about choosing periods, so it was, well, you find that they're substantial when the majority looks at the first half of 10 compared to the second half of 9 versus the minority finding, comparing the first half of 9 to the first half of 10. That was a question of which period someone should choose, and please explain to me further how this interacts with your determination on how substantial... I guess one thing I don't understand is your argument presupposes an all-or-nothing approach to review in this case. I mean, we get lots of decisions where they're multifaceted by lots of different courts, and we apply the appropriate standard of review to each separate decision that's made within those opinions. So why wouldn't you be right about the first 20 pages of the opinion, which is something that would warrant de novo review where we step into the shoes of the CIT and look for substantial evidence, but potentially wrong to suggest that that standard would apply to the second half of the opinion? It's not even a half. It's really the last four pages, which asks for more explanation, and why aren't we reviewing that separately for an abuse of discretion? Aren't they two discrete issues? Yes, Your Honor. Don't misinterpret. I'm not arguing for all-or-nothing. It is, in fact, the appellees who argue for all-or-nothing. They say because the latter part of the decision sprinkles some of the dust of Diamond Saw Blades or Taiwan Semiconductor and says, I'm sending this back for further consideration, that this court should look at the entire decision based only on Taiwan Semiconductor and Diamond Saw Blades abuse of discretion. But just to be clear, your argument is not that we have to look at the entire decision for substantial evidence. You're comfortable with the idea that we could look at these discrete and different determinations by the court and apply what we think are the appropriate standards each time. Entirely comfortable, Your Honor. I believe that you can look at part as... In fairness, Diamond Saw Blades does support the proposition that you really are supposed to fall within one pocket or the other. Whether we ultimately agree with that, it seems to say that over a pretty vigorous dissent. And that's what troubles me. I really believe that the dissent was correct, but that I'm very concerned that this court does not overrule two absolutely critical decisions, the entire practice of injury determinations before the ITC, which are NIPON and NSK, which say in these incredibly complicated cases, we have to defer to the commission to weigh all this evidence. They're getting these hundreds of questionnaire responses. It's being whittled down by their staffs. They have an eight or ten hour hearing with all these witnesses for all this examination. And we can't allow the CIT judges to become the seventh commissioner in every case. So what I don't want to see as a practitioner, besides arguing this individual case, is that any CIT judge says, gee, I don't have to worry about review from the appellate court. If I just sprinkle some magic dust of Taiwan Semiconductor and Diamond Saw Blades, as long as somewhere I say I'm sending this back for reconsideration... Okay, so you agree that on the fact findings that were remanded for further explanation when it came to substantial market share and ramp up of inventories, we should be reviewing the CIT's decision for remand on those two fact findings for an abuse of discretion, right? I agree with that. Okay, now we go to whether there was substantial evidence to support the commission's finding that there was some kind of breakthrough in the sales to large purchasers, large domestic purchasers. What was wrong with the CIT's finding when it concluded that the commission, the administrative record lacked substantial evidence to support that? It completely reweighed the evidence. I would make two points. in the commission's determination. At the preliminary phase, where it did not have purchaser questionnaires, it relied on the sworn testimony of counsel here today on behalf of Hallie's Miss Chen that there was attenuated competition because the importers of Chinese drill pipe could not sell the largest U.S. purchasers, that all of the largest U.S. purchasers had multi-year contracts with domestic producers. Is there evidence in the record that three of the eight large purchasers, in fact, did purchase the imported pipe in 2007? And that, of course, came out later as part of the final determination. So now the question is, and here's where the court really... In 2010, how many large purchasers purchased pipe, imported pipe? I believe it was roughly the same number. It was roughly one. Yes, however, it hadn't been... It was not for money. It was some kind of pipe swap. Now, that would be reweighing the evidence because, in fact, what three of the commissioners said was that the combination of a sale and swap to the largest purchaser in the United States, which the second largest U.S. producer testified at the hearing, that that had been their largest customer for years. And the loss of that single largest customer led them to lay off a third of their workforce. And yet the commissioners in the minority said, well, we don't really look at that as a sale because there was a swap involved. And the court said, yeah, I agree with those commissioners in the minority. And I would say that's reweighing the evidence. Was there a scintilla of evidence to support the three commissioners' conclusions that this gigantic sale...  against a prior major limitation to access to large purchasers when, at the beginning of the period of investigation, there were three large purchasers buying this imported pipe, and then by the end of the period of investigation there was only one? I would say that the terms large and small are just terms. The question is when, in among the large, quantities involved are significant, i.e., an analysis of those quantities. So, if at the beginning of the POI, three of the largest purchasers were buying minuscule amounts of product... Minuscule? I don't know. Yeah, I mean, they were relatively small purchases at the beginning. A million is minuscule? The purchases by the largest purchasers? In 2007? Yeah, in the size of a billion-dollar market, that's not really tremendous. But at the end, we're talking about the largest purchaser buying their entire annual needs from a Chinese importer instead of from the second-largest domestic producer. And the commissioners in the majority, who heard all the evidence, who weighed it, said, I find that this means that these Chinese importers can access the market. Then they combined it with the record as a whole. Counselor, you're well into your rebuttal time. Do you want to say something? I would like to say this. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, my name is David Goldfein. I'm appearing here today on behalf of the U.S. International Trade Commission. I'd like to take issue with a couple of points that Mr. Shagan raised regarding the standard of review. He's relying on NSK and Nippon GOES. However, those cases were clearly distinguishable from the facts here. They involved a two-option remand. And this case doesn't at all. You're urging that we review the CIT decisions for an abuse of discretion when it comes to the 2013 CIT decision? Is that right? Yes, the original CIT decision. What about the fact-finding by the commission that the CIT rejected as lacking substantial evidence? Why wouldn't you be urging that we should review that fact-finding, the lack of substantial evidence as well, standing in the shoes of the CIT? I would have expected the ITC to be really strongly urging that. Well, we don't believe. Our reading of the remand instructions from Chief Judge Stansu are that on all three issues he remanded for more explanation. What if you read it the way I read it? Okay. Which is that the CIT judge Stansu specifically made a determination that that fact-finding by the commission should be rejected for lacking substantial evidence in the administrative records. Under that understanding, what is the ITC's position on standard of review? Okay. Well, I would like to say before I answer that the Chief Judge Stansu was very clear on those two findings that he found impermissible. He said three times here that he was not precluding the commission from reconsidering those or any other findings. That's on his opinion on CA-22. That's in his first opinion. It's in his second opinion at CA-56-57. And then it's in his third opinion at CA-22-09. So he said three times, I'm not precluding the ITC from reconsidering any findings. And on CA-19, he says, it's apparent from the views of the commissioners these erroneous findings on warranted exclusion for importancy from the threat determination the commission must reconsider that determination on the whole in the absence of these findings and conclusions. And on page 5 of the 2014 opinion, Judge Stansu says in downhole pipe 1, his first decision, the court concluded that the contested determination relied in part on two factual findings that were not supported by substantial evidence on the administrative record and also directed the commission to provide further explanation with respect to two other aspects of the affirmative threat determination. Is it possible you want to revisit your assertion that his opinion is clear? I didn't say his opinion was clear. You said his opinion. I'm sorry. I said on two issues, they're clearly on their faith. The inventories and the subject imports are clearly on the subject market share. On the third issue, it could have been perhaps more clear. But his last word, my main point is his last word, particularly when he denied reconsideration, was he was not precluding the ITC from reconsidering any findings, including the two he had disallowed. So that was his last word. So you're saying that you believe that the ITC could have ultimately come to the same conclusion again, just supporting it with more evidence? Yes. Even as to those two facts? He said on page 22.09 of the appendix in his last opinion reconsideration, in this case, the court did not assign weight to the various pieces of evidence supporting an affirmative threat determination or the various other pieces of evidence detracting from such a determination. The court appropriately left that task to the ITC on remand. What if we disagree with you? What if we disagree with you? Then what's the standard of review? Well, then the standard of review, it's still abuse of discretion because clearly, at least on two other issues. I'm talking about this one. Right, but you wouldn't need to reach this one. If one of the grounds was proper for the remand, you wouldn't need to decide this third ground at all. But if you wanted to. I don't understand that at all. If one of the grounds, Mr. Shagrin, we would submit, has not demonstrated that at least two grounds here were an abuse of discretion. He hasn't demonstrated that. So the case with the remand was coming back to the commission. Both of those grounds were proper. But if we were to view the remand as coming back to the commission but preventing them from reconsidering the fact findings that the CIT has decided are not supported by substantial evidence. So you have to, on remand, give us more explanation on these issues and reconsider your threat determination. And you may not consider these two fact findings because they're not supported by substantial evidence. I know that's not the way you think we should read the opinion, but presuming that we do, accept it as a hypothetical, if you will. Assuming that's the way we read it, isn't there a real problem here? Because how in the world, then, could we possibly affirm the current CIT decision if we think the commission was forced to look at this issue and affirmatively forced to exclude from their consideration certain things that maybe they should have been allowed to include? Well, if it were a, if he were directing, he didn't. I know you don't think he did. I said assume it as a hypothetical because I don't want you to keep arguing with me about something that we're never going to agree on. So assume that I don't agree with your argument, which I don't. So assume that it, you can treat it as a hypothetical. Okay. So treat it as a hypothetical. As a hypothetical, the other two grounds were proper. And so it was one of, as long as one of those grounds is proper, it's coming back to the commission. But now it's coming back to the commission and they're being forced to reevaluate the determination and not allowed, under my hypothetical, to consider certain things that they found highly relevant and, in fact, dispositive before. And if I think that decision was wrong, then how in the world could I affirm the current one because they had to make it with their arm twisted behind their back crying uncle? I'm so intrigued here because let's assume for the moment that the commission made 20 independent fact findings and let's assume that the CIT determined that 19 of those fact findings are not supported by substantial evidence. But the 20th one needs further explanation so that it gets remanded back. You, representing the commission, do not want us to give deferential review to those 19 fact findings and look at that anew under the substantial evidence standard. You would prefer this court to review the CIT's choice to send that case back to the commission on an abuse of discretion standard. I find that really striking. Well, that's a very, in the hypothetical you've just laid out there, that's completely different from the case. Okay, so then you agree, then those 19 fact findings in my hypothetical, we should be reviewing the commission's findings there for substantial evidence? Without seeing the particular facts of that case. This is just a question of law we're talking about right now. Right, well, what's that? We're just talking about a legal question right now, not a record question. Well, one issue, if the one issue that was remanded for more explanation was a critical issue to the case, you could argue that that would be an abuse of discretion. For the whole thing? For the whole case? Well, I don't think, without getting too much into hypotheticals on that, that the record here is clearly not that record. Let me see if I can follow your argument here. You say in the footnote that you think the first determination was supported by substantial evidence. Yes. And would that include the two factual findings that the CIT disagreed with? Yes, we believe they were supported by substantial evidence. We would have preferred he didn't remand the case, but we think under an abuse of discretion standard, it's not for the commission to overturn. We may reasonably disagree with him on those two issues, but it's not given the standard here as abuse of discretion. It's not for us to overturn. And so once it was remanded, you think that there was enough flexibility that the ITC could have come back with the same conclusion that it had come with in the first instance, that in fact there was a material injury or threat of material injury finding, and you think they could have supported that had they chosen to do so. Yes, and in fact that's exactly what happened here, because the two commissioners who, when they maintain their, in the now dissent, they basically further explained everything and took out those pieces of evidence. So it was really just a fortuity of the fact that the personalities changed on the commission. It was due to, yeah, right, the composition of the commission changed. No one really, yeah, right. How often does the composition of the commission change? I mean, right here, and I've been reading other opinions where it seems like on remands the composition changes and then it seems to drive a different outcome. I'm getting a little lost. What's the term of a commissioner? A commissioner term is nine years of service. But they're staggered, right? They're staggered, yeah. And so it's very, this happens fairly infrequently. I mean, you can count a small handful of cases we're talking about. I think if you're looking at Altex, Taiwan Semiconductor, and GOES, those were changed outcomes. I think Diamond Sawblade as well. Yes, and that was composition. But, you know, that does happen. But that's, we were presuming good faith in the remand process. I'm part of the CIT judge here. And, you know, the case came back legitimately to the commission. Just to sum up, it's your position that when it comes to what I'll call a hybrid situation where a CIT court determines that some findings are not supported by substantial evidence, other findings need to be remanded for further explanation. In that kind of hybrid situation, you urge that we review all of those choices made by the CIT court for an abuse of discretion. Is that your? No, I'm not, I didn't mean to convey that in the per se rule. But, and the commission would have to, you know, address each case on its facts. So in this case, we don't believe this is a hybrid situation. If you believe it's a hybrid situation, in a hybrid situation, you would still have to, one, by definition, one or two of those issues would have come back legitimately to the commission. And therefore, the commission would have had, you know, the new commissioners would have looked at the record as they did and reached a new determination. So even in a hybrid situation, as long as the case is legitimately coming back to the commission, he hasn't shown that every... But the appellants have appealed the original CIT decision. So we're reviewing that. I understand that. And your view is that the fact findings, the two original fact findings, are supported by substantial evidence. So why don't you take a minute, if you will, please, and tell me why. Judge Chen was asking the appellant several questions about those fact findings and whether they were supported by substantial evidence. Could you tell me your thoughts on that, please, or the commission's thoughts on why they, in fact, were? Yes, we largely agree with Mr. Chagrin as to the large customers. The commission, and it's laid out in the dissent, in the now dissent opinion and remanded by the commissioners, the commission, and it's also in the majority opinion, it's on pages 37, 38 of the original opinion. We're talking about one paragraph here. The large purchasers, Chief Judge Stantz, who basically attributed a finding to the commission that the commission never made. When the commission was talking about a change to large customers,  between what happened in the preliminary phase of the investigation and the final phase of the investigation. Those were two different investigations, two different records, and when we talked about a breakthrough, we were talking about in the preliminary phase, the respondents had put forward evidence that subject imports were limited to sales to smaller customers. That changed in the final phase, and the paragraph on page 37, 38 of the opinion laid that out. I definitely understand the argument about the commission's belief that the CIT judge misunderstood the nature of one of the fact findings. What about the other one? The other one, as far as a break from the prior limitation, yes, that was a re-weighing, essentially, we would say what he was doing there. He was looking at the questionnaires that were submitted, and the commission for its breakthrough finding was relying on market share data and volume data. Basically, that showed as those commissioners were looking at it, the market share was increasing in the second half, 2009, the first half, 2010, and the volumes were increasing. Chief Judge Stanton re-weighed that evidence and looked at the questionnaire data, including, I might add, on this one key transaction in the case, the sale in interim 2010, and basically, we would say he was re- A drop or whatever. Yes, that's why he was re-weighing there, so it wasn't so much, he didn't attribute a fine because we didn't make, he was just re-weighing. Where in the ITC's decision, when it talked about a breakthrough through a major prior limitation, does the ITC decision make clear that that limitation was contemplating limitations on market share or volume of sales rather than access to large purchasers? Yes, if you give me one minute, I can turn to the opinion, I think. I read this portion of the ITC decision referring to limitation on access to large purchasers. He does discuss market share, I mean, sorry, the Commission does discuss market share. Yes, in other places. What's that? In other places. Well, I think it's in the volume discussion there. I mean, that's what we're discussing it. It may not have been in exactly where you're looking, but you'll find it in the volume analysis. Mr. Goldstein, I think that we need to give Ms. Chen a few minutes. I think we went substantially over with you. So, Ms. Chen, if you have different issues you would like to touch on since we went so far over with Mr. Goldstein, I have to make it even for him. The longer you stand there, the more he's going to get in rebuttal. Certainly. So, only try to limit yourself to additional or different issues and not just retread the same ground. Yes. Thank you, Your Honor. May it please the Court, Your Honor, Irene Chen on behalf of Appellee Downhole Pipe and Equipment. I wanted to point out a couple of issues here with regard to Judge Stansu's remand opinion. Unlike the trade court Nippon and NSK, Judge Stansu did not direct any particular outcome. In Diamond Saw Blades, the court stated, this court stated, quote, simply using the word substantial evidence is not dispositive. The deciding factor in determining what standard of review applies is whether the record before the Court of International Trade needed further explanation in order for the court to properly evaluate the agency's actions. What if those two findings that he said they couldn't rely upon anymore, what if those were the critical findings upon which the ITC relied? Well, we would submit that they were not the critical findings that the ITC relied on. The ITC had four different sub-findings for its likely adverse volume effects. This sub-finding regarding a breakthrough of a prior limitation sales to large U.S. purchasers was one of those sub-findings. And it's apparent that the record needed further explanation regardless of what Judge Stansu said. The CIT saw, based on the language, which was a reasonable reading, that there was no breakthrough in 2010 based on the record evidence. The remand dissent clarified that the actual breakthrough occurred in 2007, which, if you read the opinion, the original determination, you can't discern that from what the original commissioner said. I'll ask what I keep asking. Sure. What if we disagree? What if we disagree and we read the CIT decision as clearly concluding that there was no substantial evidence in this record to support this fact finding about a breakthrough against a major prior limitation and the CIT took away from the commission on remand, even considering that as a potential factor to support a threat to a domestic industry? What is their standard of review in a situation like this, which I'm referring to for now as a hybrid situation? Do we look at that anew and review that particular finding by the commission for substantial evidence and then look at the remand of the other factors for an abuse of discretion by the CIT? No, Your Honor. Why not? It's clear in Taiwan Semiconductor and Diamond Saw Blade, the court in those cases took issue with several findings and in some cases, they, for example, in Diamond Saw Blade, there's an attenuated competition finding. The court referred to that as potentially incorrect. The court also took issue with a price volume effect finding. Are you saying that you read Diamond Saw Blade as identifying a hybrid situation like I'm identifying here? Because the way I read Diamond Saw Blade, the majority said that all of those fact findings were being sent back by the CIT for further explanation. Now, the dissent in Diamond Saw Blade saw it differently. The dissent saw Diamond Saw Blade in the same way that I'm seeing this case today. Well, we submit this is not a hybrid situation. The bottom line is the court in Diamond Saw Blade and also here. What if it is? Hypothetically, what if it is? What's the standard of review? The bottom line is the court could not evaluate the entire determination until these issues were resolved. And the court, with regard to the prior breakthrough, there was clearly a lack of clarity. So, regardless of whether you call it substantial evidence or we find that this is not supported by substantial evidence, the bottom line is the court needed further explanation. It needed more clarity on all of these issues. And that was the case in Diamond Saw Blade and Taiwan Semiconductor and in this case. So, I take it that you don't... that regardless of the standard of review, you don't agree with the ITC that the first determination was supported by substantial evidence. We don't agree. Okay. And as to the... you've already explained why at least at the one point, even the dissent later explained that it had to give more evidence to justify what it was saying. What about the other findings? The other findings clearly needed further explanation. The inventories as well as the share of substantive reports over the POI. And that was also permissible under... you know, Judge Stancu needed clarity on those issues as well. And I would go back to the prior breakthrough. The issue here is the commission was never forced to completely drop that finding. In fact, in the remand dissent, the commission revisited it. Judge Stancu did not say you cannot absolutely come back with that finding at all. So, you can... you're free to revisit all of your findings on remand. So, when he said... There was not... So, when he said, look, re-weigh in the absence of these findings, you're saying that they could re-weigh making the same findings again with better evidence? Well, at that point, if they had other evidence on the record, they could come back and potentially... What about the same evidence? Forget additional evidence. What? Could they have made the same finding on the same evidence? Well, if they had come back with the same evidence and they further explained the other evidence and Judge Stancu said, well, I don't find that this... So, you think the ITC understood itself to be able to come back on these two findings with the identical evidence and use those to support its threat determination? Well, I think that it had to give at least further explanation on that finding. It was clear from the record there was confusion. CIC saw no breakthrough. Remand Assent came back with additional explanation saying that the breakthrough occurred in 2007. If the Commission had thought they could not come back with that finding at all, they would not have even tried to explain that. And as to the... Well, you're over your time, so we need to hear from... Thank you. ...the appellant. We'll restore your full five minutes of rebuttal. That doesn't make it exactly even. If you need to go longer, you can, but hopefully you won't. Thank you, Your Honor. I'll be very quick. I would just make two points of rebuttal. First, that I would completely disagree with some of the arguments from appellees about what the court did in its original remand. It, in fact, very similar to NIPON and NKK, short of ordering going negative, the language in the remand order itself says the court directs the ITC to reconsider its affirmative threat determination on the whole, absent those findings and conclusions. So it invalidated the decisions on these two key facts that it found were unsupported by substantial evidence and said to the ITC, you reconsider this decision, but you can't rely  But why did the defense then come back and say, well, we'll give you more explanation and more data and, in fact, clarify what was clearly a confusing point in their original opinion? And that's unfortunate, but I know what would have happened if the dissent was actually just a new majority and they came back with that opinion, we would be just like NIPON. Then the judge below would say, I told you not to do this, so now I'm directing you to go to negative. That's exactly what happened in NIPON, where the court said, look, on this underselling, you don't have it right, I want you to do this again, and the majority came back and said, no, here's the way we're explaining the underselling. But you didn't even say that, that that's where we would have ended up in NIPON, but I've seen plenty of cases where the CIT has said, I don't think your facts are supported by substantial evidence, and later they come back with more evidence and the CIT says, okay, you got me, I agree now. Not every judge is as firm in their view as the judge in NIPON and NSK. Well, this judge seemed very firm in his view, didn't he? And it seems here that when the court says Well, but the government is correct, though, that the final, that in his final opinion, he said, go back and just tell me everything. Well, I think in his decision, his first decision, he said, absent those findings and conclusions, he's telling them it's invalidated. I think, given the severity of his remand language, the idea that he would have just said, oh, well, thank you very much, but we wouldn't be in a different position today. So I do believe, in the end, this court's going the right way in terms of saying, we have a substantial evidence ruling here. We have to treat it to no vote. We have to determine two things, I believe, under NIPON and NSK, which is why this case is so different from Taiwan Semiconductor and Diamond Saw Blades. I mean, Diamond Saw Blades didn't invalidate. Okay, but suppose that we agree with you that the first two determinations, well, we'll say one and a half because everybody admits that one of the things the CIT analyzed it didn't look at correctly, right? It was sort of misunderstood. So suppose that the CIT's decision on those first two, where it said they weren't supported by substantial evidence, is erroneous. Okay? There were still these additional issues that were part of the threat determination, upon which the CIT decided it needed more explanation in the APA sense in order to review you. I mean, look at this contrary evidence. You took this one period of time snapshot, but if you took this other period, I don't understand, and then in the other issue they point out that the dissenters show, you know, no significant increase in inventories by looking at this one chart. You cite the other chart, but what you failed to do, and the APA requires every agency to do this, is to address all the arguments, right? Like, really, you have to address everything. So what if that doesn't feel like an abuse of discretion on those factual points? Where are we now? I think probably we're at a place that you'd agree with, which is maybe we can't affirm maybe if that's the case. We can't affirm the current decision because when it went back to the Commission they were told not to include these things. But maybe the remand order is itself okay because the abuse of discretion. So where do we end up? How do we handle this case if that's where we end up? Well, that's where I believe that you send the case back and you say, we can't affirm because you made these mistakes on substantial evidence. And I do believe, and this is where there's tension, and you can see a lot of that tension in some of these later decisions after NIPON and NSK, and that is, I believe NIPON and NSK stand for, even if you find any substantial evidence issues, before you send it back to the Commission, tell us that you've looked at the record as a whole. And I find in this initial 18-22 page decision that the court never said, let me see if the record as a whole, let me see if the other things you relied upon are enough. And I believe that's the deferential standard that this court has always had. But isn't that in fact what the court did and said, I need more explanation on these other factors? Only on the other factors. But at the heart of this decision, I don't even think you can have a change, other than the change in the members of the Commission. I don't think on the... You can't possibly be asking the three of us to do that now in the first instance, are you? Are you suggesting that now our role is to look at all the record evidence as a whole in the first decision and see if it's supported when you admit the CIT didn't do that? Are you saying the appellate court should do it in the first instance? No, I'm saying that you should send it back and tell the Court of International Trade is supposed to look at the record as a whole. It's supposed to look at the Commission's determination before it sends a case back when it finds that one item is not supported by substantial evidence. I believe Nippon NSK squarely... But even if the court had articulated that it was doing that, it still would have remanded because it needed more information on specific items. And we look at that for an abuse of discretion. And as the government points out, once they get it on remand, they can do whatever they want. It could have. On the other hand, I believe that, you know, and this was not the case in Diamond Saw Blades or Taiwan Semiconductor, if the court says, gee, I find there are some areas where there might be further explanation, but you know what? I'm still going to look at this decision based on the record as a whole and I can find that there's enough here given the deferential standard. There's enough here that it supports your decision. So are you saying that we should look at this decision and the explanation part, which begins at the bottom of 19 and only spans about three pages because the first 19 pages are all about the substantial evidence review. Are you saying if we agree with you on that first part, we should look at the second part as a moreover or at a minimum we should at least look at it as we're not certain that the court would have remanded for more explanation if it had gotten the first part right? Yes, the latter, Your Honor. So you're telling us we don't have to tell the CIT what it has to do, but tell it to take a fresh look in light of this and make its own assessment in the first instance. Yes, based on the record as a whole. That's correct. Thank you, Your Honor. Thank you very much.